OPINION
{¶ 1} Plaintiff-appellant, Larry Triplett, Administrator of the Estate of Angela Triplett, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Nationwide Mutual Fire Insurance Company, and denying plaintiff's motion for partial summary judgment.
 {¶ 2} On July 7, 1994, Angela Triplett died as a result of injuries sustained in a motor vehicle accident while riding as a passenger in a rented vehicle driven by Tonya Taylor. Plaintiff, Angela's husband, was appointed administrator of Angela's estate and instituted a wrongful death suit against Taylor and the liability insurer of the rented vehicle. Plaintiff eventually recovered policy limits of $25,000 from Taylor's liability insurer and policy limits of $25,000 from the liability insurer of the rented vehicle in exchange for plaintiff's release of all claims arising out of the accident.
 {¶ 3} In 1999, the Ohio Supreme Court decided Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, wherein the court construed a commercial automobile policy to extend coverage under its uninsured/underinsured motorist endorsement to a company employee even though the vehicle involved in the accident was not a company-owned vehicle and the employee was not acting in the scope of employment at the time of the accident. In light of the decision in Scott-Pontzer, plaintiff, in March 2000, notified defendant of his intent to assert an underinsured motorist ("UIM") claim under a commercial automobile policy issued by defendant to Angela's alleged employer, the Springfield Local School District ("SLSD"). Defendant denied the claim in June 2000, on the ground that Angela was not an SLSD employee at the time of the accident.
 {¶ 4} On October 31, 2001, plaintiff filed an action for declaratory relief regarding the availability of UIM coverage under the policy. Defendant timely answered plaintiff's complaint and filed a counterclaim for declaratory judgment.
 {¶ 5} On January 22, 2002, defendant moved for summary judgment on several grounds. Defendant first asserted that plaintiff was not entitled to UIM benefits under the policy because plaintiff breached the notice, consent to settle and subrogation provisions of the policy, resulting in prejudice to defendant. Defendant further maintained that plaintiff's claims were barred by the doctrine of res judicata, that Angela was not an employee of the school district at the time of the accident, and that Angela was not an "insured" under the terms of the policy. Plaintiff contested defendant's motion for summary judgment and filed a motion for partial summary judgment. Defendant filed a second motion for summary judgment and a response to plaintiff's motion for partial summary judgment. Therein, defendant reiterated the arguments made in its first motion for summary judgment and raised an additional argument regarding Taylor's alleged negligence. More specifically, defendant maintained that the accident resulted from a defective tire, not Taylor's negligence, and, as such, a genuine issue of material fact remained as to whether Taylor could be considered an underinsured motorist. Plaintiff filed a memorandum contra in response and defendant filed a reply thereto.
 {¶ 6} On July 5, 2002, the trial court rendered a decision granting defendant's summary judgment motion and denying plaintiff's motion for partial summary judgment. The trial court relied upon the reasoning in Alatsis v. Nationwide Ins. Ent., Franklin App. No. 01AP-1038, 2002-Ohio-2906, in which this court affirmed a grant of summary judgment to an insurer because the insured breached a subrogation provision identical to the subrogation provision at issue in the instant case. Having so found, the trial court did not address defendant's additional arguments. Plaintiff then appealed to this court from the July 25, 2002 judgment entry dismissing plaintiff's action with prejudice.
 {¶ 7} On appeal, plaintiff advances the following assignment of error:
The trial court erred in granting summary judgment to Nationwide Mutual Fire Insurance Company when its policy contains language in its uninsured motorist coverage endorsement that reasonably construed allows its insured to make a settlement [which includes a release of the tortfeasor] without its consent. Such specific provision as to uninsured motorist coverage is not contradicted, nor made any less ambiguous, by a general condition provision regarding subrogation.
 {¶ 8} Because plaintiff's assignment of error arises out of the trial court's ruling on a motion for summary judgment, we review such disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. In conducting our review, we apply the same standard as that employed by the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. In determining whether the trial court properly granted summary judgment, we must review the standard for granting summary judgment set forth in Civ.R. 56, as well as the applicable law. Summary judgment is appropriate only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181,183.
 {¶ 9} Initially, we note that, although defendant raised several arguments before the trial court as to why plaintiff is not entitled to UIM coverage under the policy, the trial court barred plaintiff's recovery based exclusively on his failure to comply with the subrogation provision in the policy and did not address any of defendant's other arguments. Accordingly, for purposes of this appeal, we will address only the issue regarding the subrogation provision, as determined by the trial court.
 {¶ 10} The pertinent policy language provides:
BUSINESS AUTO COVERAGE FORM
* * *
SECTION IV — BUSINESS AUTO CONDITIONS
* * *
A. LOSS CONDITIONS
* * *
2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". * * *
* * *
5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
 If any person or organization to or for whom we make payment under his Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.
* * *
OHIO UNINSURED MOTORISTS COVERAGE
* * *
A. COVERAGE
 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" because of "bodily injury" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".
2. We will pay under this coverage only if a. or b. below applies:
 a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or
 b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in paragraph b. of the definition of "uninsured motor vehicle" and we:
(1) Have been given prompt written notice of such settlement; and
 (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
* * *
C. EXCLUSIONS
This insurance does not apply to:
 1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle".
* * *
E. CHANGES IN CONDITIONS
* * *
 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
* * *
 c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle".
* * *
F. ADDITIONAL DEFINITIONS
The following are added to the DEFINITIONS Section:
* * *
3. "Uninsured motor vehicle" means a land motor vehicle or trailer:
* * *
 b. Which is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle for which the sum of all liability bonds or policies at the time of the "accident" provides at least the amount required by the applicable law where a covered "auto" is principally garaged but that sum is either:
 (1) Less than the Limit of Insurance for Underinsured Motorists Coverage under this Coverage Form or policy;
* * *.
 {¶ 11} Plaintiff contends that this court's decision in Howard v. State Auto Mut. Ins. Co. (Mar. 14, 2000), Franklin App. No. 99AP-577, controls the instant case. In that case, the insureds sought UIM benefits under their policy after settling with and releasing the tortfeasor and her liability insurer. The trial court determined that the insureds were precluded from recovering UIM benefits under the policy due to their failure to notify and obtain consent from the insurer prior to settling with the tortfeasor and her insurer. Finding the notice and consent provisions of the policy contradictory, confusing and, thus, ambiguous, this court construed the policy in favor of the insureds to allow benefits without the prior consent of or notice to the insurer.
 {¶ 12} Plaintiff relies upon Howard for the proposition that he should be excused from his failure to notify and obtain consent from defendant prior to settling with Taylor, her liability insurer and the liability insurer of the vehicle. More specifically, plaintiff contends that Section A(2)(a) of the UIM endorsement reasonably permits him to conclude that he is entitled to UIM benefits without prior notice of settlement with and release of the insurer of the vehicle where, as here, the vehicle involved in the accident is an underinsured vehicle and the limits of all applicable liability policies have been exhausted. Plaintiff further contends that Section C(1) of the UIM endorsement reasonably permits him to conclude that he is entitled to UIM benefits without obtaining consent to settle from defendant where, as in this case, the vehicle involved in the accident is an underinsured vehicle. Although plaintiff concedes that the policy at issue contains a general subrogation clause not present in the policy construed in Howard, plaintiff maintains that, in reading the specific notice and consent provisions in conjunction with the general subrogation provision, he could reasonably conclude that settling a claim for the underinsured motorist's policy limits without notice to or the consent of defendant would not violate the general subrogation provision, since such action is permitted under the specific contractual language of the policy. In other words, plaintiff contends that, because one part of the policy permits him to settle with and release an underinsured motorist without prior notification to or consent of defendant, the policy itself gives defendant no "right" of subrogation that plaintiff is required to protect. Plaintiff argues, alternatively, that the specific provisions in the UIM endorsement conflict with the general subrogation provision, rendering the subrogation provision unenforceable.
 {¶ 13} However, as noted by the trial court, this court distinguished Howard in Alatsis, wherein this court held that, despite contractual language in a UIM endorsement permitting settlement without notice to and consent of the insurer, a general subrogation clause identical to that at issue here independently obligated the insured to do everything necessary to secure the insurer's rights, including not settling with and releasing the tortfeasor from liability without prior notice to the insurer. This court further noted that, if an insured compromised with the tortfeasor in such a way as to destroy the insurer's right of subrogation, the insurer was materially prejudiced. Id. at ¶ 18, citing Frazier v. United Ohio Ins. Co. (June 27, 1995), Franklin App. No. 94APE09-1339, citing Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, 30-31. Accordingly, the trial court properly applied Alatsis in concluding that plaintiff was precluded from recovering UM/UIM benefits.
 {¶ 14} Plaintiff further contends that it would be inequitable to deprive him of UIM coverage when neither he nor defendant had any reason to believe the settlement would violate the terms of the policy. In other words, plaintiff argues that, at the time he settled with and released Taylor, her insurer, and the other liability insurer, he had no legal right to assert a claim under the policy, as Scott-Pontzer had not yet been decided. The same argument was considered and rejected by this court in Kerwood v. Cincinnati Ins. Co., Franklin App. No. 02AP-575, 2002-Ohio-7024, at ¶ 27:
* * * "[A]waiting a favorable supreme court decision is not a reasonable excuse for a * * * delay in filing a claim." * * * Although any attempt to collect under the policy might have been in vain prior to 1999, "[n]othing prevented [the insured] from * * * promptly notifying [the insurer] of the accident and preserving [the insurer's] subrogation rights." * * *
 {¶ 15} Although we have found no infirmity in the trial court's application of Alatsis to the instant case, we note that, after the trial court rendered its decision, the Ohio Supreme Court decided Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, 2002-Ohio-7217, which, like the instant case, considered whether a provider of UM/UIM coverage may be discharged from its obligation to provide coverage based on the insured's failure to protect the insurer's subrogation rights. In discussing this issue, the court set forth a framework for determining whether an insured's alleged breach of a subrogation provision in a UM/UIM policy precludes the insured from recovering UM/UIM benefits under the policy. More specifically, the court held that such a determination requires a two-stage inquiry. Id. at ¶ 89. A court must first determine whether the insured actually breached the subrogation provision. Id. at ¶ 91. If the subrogation provision was not breached, the inquiry ends and UM/UIM coverage must be provided. Id. If, however, the subrogation provision was breached, the court must determine whether the insurer was prejudiced as a result of the breach. Id. Prejudice is presumed, unless the insured presents some evidence to rebut that presumption. Id. Because the trial court rendered its decision without the guidance provided by Ferrando, we must remand the case for a determination as to whether the subrogation clause was breached and, if so, whether defendant suffered prejudice as a result of the breach.
 {¶ 16} Finally, as noted above, the trial court relied exclusively upon plaintiff's breach of the subrogation clause in determining that plaintiff was not entitled to UIM benefits and did not address any of defendant's other arguments as to why plaintiff is not entitled to UIM coverage under the policy. Defendant raises these arguments in its brief before this court. However, the trial court has not yet considered any of these issues. It is well-established that questions not considered by a trial court will not be ruled upon by this court. Mills-Jennings, Inc. v. Dept. of Liquor Control (1982), 70 Ohio St.2d 95, 99.
 {¶ 17} For the foregoing reasons, plaintiff's single assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed and the matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and remanded.
PETREE, P.J., and BROWN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.